IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

EDWARD MONK                                                                PLAINTIFF

VS.                                       CASE NO. 4:20-CV-33-KGB

STEPHANIE FLOWERS,
In her Individual Capacity                                                 DEFENDANT

## SECOND AMENDED AND SUBSTITUTED COMPLAINT

COMES NOW Edward Monk, plaintiff herein, and for his amended complaint, states and alleges as follows:

JURISDICTION AND PARTIES

1. This claim involves a federal question under the First Amendment to the U.S. Constitution. This Court has jurisdiction pursuant to 28 U.S.C. 1331 and 1343, 42 U.S.C. § 1983, and The Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202. The plaintiff pleads pendent state claims for relief pursuant to 28 U.S.C. 1367.

2. Venue for this action lies in the Eastern District of Arkansas because a substantial part of the acts and omissions that give rise to the plaintiff's cause of action occurred in Little Rock, Arkansas. 28 U.S.C. § 1391(b) (2).

3. Divisional venue is proper in the Central division because events leading to the claim for relief occurred in Little Rock, Arkansas.

4. Stephanie Flowers, the defendant, was at all relevant times an Arkansas state senator. She is sued in her individual capacity.

5. Edward Monk, the plaintiff, was at all relevant times a constituent of State Senator Flowers and resided in the Senator's state congressional district. Mr. Monk was and remains a duly appointed part-time police officer with the White Hall, Arkansas

1

Police Department. He is also a retired Lieutenant Colonel in the U.S. Army and a co-owner and instructor of a firearms training school.

## FACTUAL ALLEGATIONS

6. In January of 2013, Mr. Monk sent an email to Senator Flowers that urged her support of certain legislation pertaining to firearms, and that informed the Senator of free educational presentations that Mr. Monk's firearms training school would be hosting that addressed the threat of active shooter attacks, a topic that Mr. Monk had been researching for over a decade.

7. An email exchange between the parties ensued. The email exchange was polite and innocuous.

8. In the email exchange, Mr. Monk informed Senator Flowers of his credentials, expertise and interest in firearms education, and he requested for the parties to have a meeting to discuss the policy considerations touched upon by the email exchange.

9. Senator Flowers agreed to meet with Mr. Monk at the State Capitol in Little Rock on or about February 4, 2013.

10. Although nothing had occurred to cause alarm, Senator Flowers requested that a police officer be available to respond in case of trouble.

11. The meeting occurred peaceably and without incident or threat. The parties simply agreed to disagree.

12. Four years later, on February 21, 2017, Mr. Monk emailed Senator Flowers regarding House Bill 1249. If enacted, the proposed legislation would have allowed certain holders of an Arkansas Concealed Handgun Carry License to legally carry their handgun in college buildings.

13. In the same February 21, 2017 email Mr. Monk advised Senator Flowers that with his experience as a gun trainer and law enforcement officer, and a decade of research into the active shooter threat, he had acquired data relevant to consideration of HB 1249 and wanted to share the data with her because she was his representative and because he wanted to understand Senator Flowers opposition to HB 1249, a bill which Mr. Monk supported.

14. In response to Mr. Monk's same February 21, 2017 email, Senator Flowers did not reply to Mr. Monk. Instead, she printed a copy of Mr. Monk's email and delivered it to the Sergeant at Arms of the Arkansas Senate, who is authorized by state statute and Legislative Rule with the power to prohibit entry of persons into his respective legislative house.

15. Senator instructed the Sergeant at Arms to take the email to the chief of the Capitol Police and that she did not want Mr. Monk "in the area or in her office."

16. Upon the giving of these instructions, it was understood and agreed by Senator Flowers and the Sergeant at Arms that the Sergeant would take the matter to the capitol police.

17. The copy of the email was delivered to the police and the email copy had on it a handwritten note signed by Senator Flowers stating: "This is most recent email. I feel this is intimidating & harassing considering the history from 2013. Senator Flowers."

18. In addition, Senator Flowers delivered, or caused to be delivered, a copy of her aforementioned handwritten note on the email copy to the Arkansas State Police.

19. There was, in fact, nothing which transpired in 2013 or thereafter that would give a reasonable state representative any cause to feel intimidated or harassed by her constituent.  The parties simply disagreed about gun policy; however, Senator Flowers disapproved of Mr. Monk's desire to persuade her on gun policy. The Senator expressed this disapproval to the police officer that she had called to the scene of the February 2013 meeting.  It was Senator Flowers' disapproval of Mr. Monk's opinion and his desire to persuade her that, in whole or in part, prompted Senator Flowers to call police in 2013.

20. In further response to Mr. Monk's February 21, 2017 request for a meeting, Senator Flowers' also instructed the Sergeant at Arms to obtain a photo of Mr. Monk.

21. The Sergeant at Arms provided the Capitol Police with a copy of Senator Flowers' handwritten note that alleged Mr. Monk was harassing her, whereupon a member of the Capitol Police ran a search through ACIC for Mr. Monk and obtained his photograph. This photo was provided to Senator Flowers, and it was disseminated among police as a tool to prevent Mr. Monk to come to the capitol unrecognized.

22.  A "look out" among police for Mr. Monk ensued at the state capitol.

23. In addition, Senator Flowers, for the purpose of pressuring Mr. Monk to refrain from communicating with her, contacted the Arkansas State Police's division of concealed gun carry licensing, which resulted in a phone call from the division's lieutenant that sought to dissuade Mr. Monk from further communication with Senator Flowers.

24. Senator Flowers' undertakings with respect to Mr. Monk were brought to Mr. Monk's attention after Arkansas State Police contacted Mr. Monk's police chief

(Mr. Monk is a police officer with the White Hall police department) who then ordered Mr. Monk to report to him and explain his alleged misconduct in relation to his request to meet with Senator Flowers, even though Mr. Monk had, in fact, never committed any misconduct.

25. As a result of Senator Flower's actions, Mr. Monk's political expression was stifled and abridged. Senator Flowers' used law enforcement to deter Mr. Monk from communicating with her and from even coming to the state capitol. This caused Mr. Monk to choose to refrain from traveling to the capitol and avoid engaging in political expression for fear of reprisals.   By way of example, Mr. Monk had been invited to come to the state capitol to be a guest on a radio show and speak about gun policy. Solely because of the circumstances as described hereinabove, Mr. Monk declined to appear on the radio show. It was not until the second week of March of 2017 that Mr. Monk's fear was allayed when he received adequate assurances from the relevant law enforcement authorities informing him that he was free to come onto the grounds of the state capitol.

26. The police action which caused Mr. Monk to refrain from free expression was precipitated, approved and ratified by Senator Flowers through collaboration with the Sergeant at Arms and police officers.

27. Senator Flowers decision to use law enforcement personnel to prevent Mr. Monk from both coming to the state capitol and communicating with her about legislation was not within the sphere of legitimate legislative activity.  Her decision was not a general policy that affected the larger population. Nor was it a decision with prospective implications reaching beyond Mr. Monk. Instead, Senator Flowers' use

of the law enforcement apparatus was an *ad hoc* decision that applied to and affected only Mr. Monk. There is no indication that Senator Flowers was following Arkansas legislative procedures and her targeting of Mr. Monk did not serve any legislative purpose. Senator Flowers' adverse actions targeting Mr. Monk were not legislative in either form or substance.

COUNT ONE – DEPRIVATION OF RIGHT OF FREE SPEECH<br>42 USC § 1983

28. By engaging Senator Flowers as described above concerning prospective legislation, Mr. Monk was engaged in political speech which is protected by the First Amendment to the U.S. Constitution.

29. In response to Mr. Monk's political speech, Senator Flowers took adverse action that would chill a person of ordinary firmness from continuing the protected speech.

**30.** Senator Flowers' adverse action against Mr. Monk was motivated at least in part by the protected speech.  It was Senator Flowers' disapproval of the content of Mr. Monk's speech about gun policy that motivated her to utilize the coercive powers of law enforcement in the manner described above. Senator Flowers could have simply advised Mr. Monk that she did not want to meet with him, or she could have simply ignored his February 21, 2017 email. Instead, without communicating at all with Mr. Monk, her constituent, Senator Flowers enlisted the machinery of law enforcement to abridge Mr. Monk's exercise of his right of free expression.

31. By directing law enforcement against Mr. Monk in the manner that she did, Senator Stephens acted under color of law, purporting to utilize the government's powers of coercion through the combined efforts of the Sergeant at Arms and the state or local police.

32. By retaliating against Mr. Monk for his exercise of free speech, Senator Flowers is liable under 42 USC § 1983.

COUNT TWO – DEPRIVATION OF RIGHT TO PETITION GOVERNMENT
42 USC § 1983

33. By his efforts to engage Senator Flowers in the manner described hereinabove, Mr. Monk was exercising his right under the Petition Clause of the First Amendment to the U.S. Constitution.

34. Mr. Monk's claim under the petition clause is distinct from his claim under the free speech clause, and this distinction is explained by Supreme Court precedent as follows: "The right to petition allows citizens to express their ideas, hopes, and concerns to their government and their elected representatives, whereas the right to speak fosters the public exchange of ideas that is integral to deliberative democracy as well as to the whole realm of ideas and human affairs."

35. By her actions described above, Senator Flowers took adverse action against Mr. Monk with respect to his protected activity under the Petition Clause of the First Amendment. The adverse action was retaliation for Mr. Monk's petitioning activities, which may include his 2013 communications and/or his February 21, 2017 email. Senator Flowers could have simply advised Mr. Monk that she did not want to meet with him, or she could have simply ignored his February 21, 2017 email. Instead, without communicating at all with Mr. Monk, her constituent, Senator Flowers enlisted the machinery of law enforcement to abridge Mr. Monk's exercise of his right to petition the government.

36. Senator Flowers' conduct was such as to chill a person of ordinary firmness from continuing in activity protected under the Petition Clause.

37. Senator Flowers adverse action was motivated, at least in part, by Mr. Flowers activity. Senator Flowers had no real and legitimate safety concerns in trying to prevent Mr. Monk from speaking to her. She was simply averse to Mr. Monk's desire to engage her on a controversial subject on which the parties had policy disagreements.

38. By directing law enforcement in the manner that she did, Senator Stephens acted under color of law, purporting to utilize the government's powers of coercion through the combined efforts of the Sergeant at Arms and the state or local police.

39. By her adverse action against Mr. Monk's protected activity under the Petition Clause, Senator Flowers is liable under 42 USC § 1983.

## COUNT III – ARKANSAS CIVIL RIGHTS ACT
## REDRESS FOR VIOLATION OF STATE CONSTITUTION ARTICLE 2 § 4

40. Under Article 2 Section 4 of the Arkansas Constitution, citizens have the right to petition their government, or any department thereof, by address or remonstrance.

41. By the conduct described hereinabove, Senator Flowers under color of law, has subjected the plaintiff, or has caused him to be subjected to the deprivation aforementioned right under the Arkansas Constitution. Defendant Flowers is thus liable to the plaintiff for legal and equitable relief or other proper redress.

## COUNT IV – ARKANSAS CIVIL RIGHTS ACT
## REDRESS FOR VIOLATION OF STATE CONSTITUTION ARTICLE 2 §6

42. Under Article 2 Section 6 of the Arkansas Constitution, citizens enjoy the right to free expression.

43. By the conduct described hereinabove, Senator Flowers under color of law, has subjected the plaintiff, or has caused him to be subjected to the deprivation aforementioned right under the Arkansas Constitution. Defendant Flowers is thus

liable to the plaintiff for legal and equitable relief or other proper redress.

COUNT VI – ARKANSAS CIVIL RIGHTS ACT<br>INTERFERENCE, COERCION, INTIMIDATION

44. Under A.C.A. 16-23-108 it is unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted under the Arkansas Constitution.

45. By taking the actions described in this complaint, Senator Flowers intimidated, and interfered with the plaintiff in the exercise of his constitutional right to free expression and to petition the government.

46. Pursuant to A.C.A. 16-23-108(c), plaintiff is entitled to recover compensatory damages and punitive damages against the defendant.

WHEREFORE, plaintiff prays:

(a) That the trial of this matter be before a jury;

(b) the court grant judgment against the defendant under 42 U.S.C. § 1983 and award the plaintiff nominal, compensatory, and punitive damages;

(c) That the court grant judgment against the defendant for the deprivation of rights under the Arkansas Constitution as described hereabove;

(d) That the court grant judgment against the defendant pursuant to A.C.A. § 16-23-108 in accordance with the allegations as stated herein above;

(e) That pursuant to the matters pled hereinabove, the court declare the defendant's conduct unconstitutional under both Federal and State constitutions and grant permanent injunctive relief enjoining the defendant from the unconstitutional conduct herein

described.

(f) That the court grant the plaintiff punitive damages;

(g) That the court grant the plaintiff costs and reasonable attorney's fees pursuant to 42 USC § 1983 and the attorney's fees provisions of the Arkansas Civil Rights Act; and

(h) That the court grant the plaintiff any further relief that is appropriate under the circumstances.

Respectfully Submitted,
EDWARD MONK


BY:   /s/ W. Whitfield Hyman
W. Whitfield Hyman (#2013-237)
Attorney for Plaintiff
King Law Group
300 N. 6th Street
Fort Smith, AR 72901
Tel. (479)782-1125
Fax: (479) 316-2252
hyman@arkansaslawking.com


/s/ Monzer Mansour
Monzer Mansour (97144)
Attorney for Plaintiff
217 N. East Ave. Suite 101
Fayetteville, Arkansas 72701
Tel: (479) 521-6361
Email: monzerlaw@gmail.com