## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## CENTRAL DIVISION

**EDWARD MONK**                                                                **PLAINTIFF**

**v.**                              **Case No. 4:20-cv-00033 KGB**

**STEPHANIE FLOWERS**                                          **DEFENDANT**

### ORDER

Before the Court is defendant Stephanie Flowers' motion to dismiss plaintiff Edward Monk's second amended and substituted complaint (Dkt. No. 21). Mr. Monk responded in opposition to the motion (Dkt. No. 23). Senator Flowers also filed a notice of supplemental authority to which Mr. Monk responded (Dkt. Nos. 27, 28). For the following reasons, the Court grants the motion to dismiss (Dkt. No. 21).

**I.      Background**

The Court accepts Mr. Monk's factual allegations as true at this stage of the proceedings. *Blomker v. Jewell*, 831 F.3d 1051, 1054 (8th Cir. 2016) (internal citations omitted). The following factual allegations are taken from Mr. Monk's operative second amended and substituted complaint (Dkt. No. 20).

Senator Flowers is an Arkansas state senator (*Id.*, ¶ 4). Mr. Monk is a constituent of Senator Flowers, a part-time police officer with the White Hall, Arkansas, Police Department, and a co-owner and instructor of a firearms training school (*Id.*, ¶ 5).

In January 2013, Mr. Monk sent Senator Flowers an email requesting that they meet to discuss pending firearms legislation (*Id.*, ¶¶ 6–8). The parties met on or about February 4, 2013, and Senator Flowers requested that a police officer be available to respond in case of trouble (*Id.*, ¶¶ 9–10). The meeting occurred peaceably and without incident (*Id.*, ¶ 11). The parties disagreed

about gun policy, and Mr. Monk alleges that Senator Flowers disapproved of Mr. Monk's desire to persuade her about gun policy which prompted Senator Flowers to call police (*Id.*, ¶ 19).

On February 21, 2017, Mr. Monk sent an email to Senator Flowers requesting to meet with Senator Flowers and share data with her about a bill which would have allowed holders of Arkansas Concealed Handgun Carry Licenses to carry their handguns in college buildings (*Id.*, ¶¶ 12–13). Senator Flowers did not reply to the email and instead showed the email to the Sergeant at Arms of the Arkansas Senate, who is authorized by state statute and legislative rule with the power to prohibit entry of persons into his respective legislative house (*Id.*, ¶ 14). Senator Flowers instructed the Sergeant at Arms to take the email to the chief of the Capitol Police and that she did not want Mr. Monk "in the area or in her office." (*Id.*, ¶ 15). The copy of the email was delivered to the police with a handwritten note signed by Senator Flowers stating: "This is most recent email. I feel this is intimidating & harassing considering the history from 2013. Senator Flowers." (*Id.*, ¶ 17). Senator Flowers delivered, or caused to be delivered, a copy of the printed email with the handwritten note to the Arkansas State Police (*Id.*, ¶ 18).

Senator Flowers also instructed the Sergeant at Arms to obtain a photo of Mr. Monk (*Id.*, ¶ 20). The Capitol Police ran a search and obtained Mr. Monk's photo, which was provided to Senator Flowers and police, which Mr. Monk alleges was done "as a tool to prevent Mr. Monk to come to the capitol unrecognized." (*Id.*, ¶ 21). A "look out" among police for Mr. Monk ensued at the state capitol (*Id.*, ¶ 22).

According to Mr. Monk, Senator Flowers, for the purpose of pressuring Mr. Monk to refrain from communicating with her, also contacted the Arkansas State Police's division of concealed gun carry licensing (*Id.*, ¶ 23). Mr. Monk alleges that this "resulted in a phone call from

the division's lieutenant that sought to dissuade Mr. Monk from further communication with Senator Flowers." (*Id.*).

Mr. Monk learned of Senator Flowers' actions after Arkansas State Police contacted Mr. Monk's police chief at the White Hall Police Department (*Id.*, ¶ 24).  Mr. Monk's police chief ordered Mr. Monk to report and explain his alleged misconduct in relation to his request to meet with Senator Flowers (*Id.*).

Mr. Monk alleges that Senator Flowers used law enforcement to deter Mr. Monk from communicating with her and from coming to the state capitol, which caused Mr. Monk to choose to refrain from traveling to the capitol and to avoid engaging in political expression for fear of reprisals (*Id.*, ¶ 25).  Mr. Monk declined to be a guest on a radio show broadcast at the state capitol because of these circumstances (*Id.*).  In the second week of March 2017, Mr. Monk's fear was allayed when he received assurances from the relevant law enforcement authorities informing him that he was free to come onto the grounds of the state capitol (*Id.*).

Mr. Monk alleges that the police action which caused Mr. Monk to refrain from free expression was precipitated, approved, and ratified by Senator Flowers through collaboration with the Sergeant at Arms and police officers (*Id.*, ¶ 26).  Mr. Monk further alleges that Senator Flowers' decision to use law enforcement personnel to prevent Mr. Monk from both coming to the state capitol and communicating with her about legislation was not within the sphere of legitimate legislative activity (*Id.*, ¶ 27).

Mr. Monk brings claims pursuant to 42 U.S.C. § 1983, alleging that Senator Flowers retaliated against him for his exercise of free speech and for his right to petition government under the First Amendment of the United States Constitution (*Id.*, ¶¶ 28–39).  Mr. Monk also brings

claims pursuant to the Arkansas Civil Rights Act, Arkansas Code Annotated § 16-123-105 and § 16-123-108, for violations of the Arkansas Constitution (*Id.*, ¶¶ 40–46).

## II.     Legal Standard

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).  "While a complaint attacked by a [Federal] Rule [of Civil Procedure] 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (alteration in original) (citations omitted).  "[T]he complaint must contain facts which state a claim as a matter of law and must not be conclusory." *Briehl v. General Motors Corp.*, 172 F.3d 623, 627 (8th Cir. 1999).  "When ruling on a motion to dismiss, the district court must accept the allegations contained in the complaint as true and all reasonable inferences from the complaint must be drawn in favor of the nonmoving party." *Young v. City of St. Charles*, 244 F.3d 623, 627 (8th Cir. 2001).

When ruling on a Rule 12(b)(6) motion to dismiss, a district court generally may not consider materials outside the pleadings. *Noble Sys. Corp. v. Alorica Cent., LLC*, 543 F.3d 978, 982 (8th Cir. 2008); *see* Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.").  The district court "may, however, consider

4

some public records, materials that do not contradict the complaint or materials that are 'necessarily embraced by the pleadings.'" *Noble Sys. Corp.*, 543 F.3d at 978 (quoting *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999)).

### III.    Analysis

Senator Flowers in her motion to dismiss argues that Mr. Monk fails to state a claim for violation of his rights under the United States Constitution and Arkansas Constitution and that she is therefore entitled to qualified immunity (Dkt. No. 22, at 4–5).  According to Senator Flowers, Mr. Monk did not experience any injury as a result of Senator Flowers' actions because he never tried to visit the state capitol after the events at issue and because he was not otherwise restricted from exercising his First Amendment rights (*Id.*, at 6).  Senator Flowers further argues that Mr. Monk's instant lawsuit is a collateral attack on the judgment in a previous lawsuit he filed in the Circuit Court of Pulaski County, Arkansas, and that *res judicata*, collateral estoppel, and the *Rooker-Feldman* doctrine bar Mr. Monk's claims (*Id.*, at 8–13).  Senator Flowers also argues that Mr. Monk lacks standing because the state court adjudicated that Mr. Monk failed to state any cause of action (*Id.*, at 13).  Finally, Senator Flowers argues that she is entitled to sovereign immunity for any claims against her in her official capacity (*Id.*, at 14).

In response, Mr. Monk argues that he adequately stated facts showing a violation of his constitutional rights sufficient to plead a cause of action for First Amendment retaliation (Dkt. No. 23, at 5–11).  Mr. Monk next argues that Senator Flowers is not entitled to qualified immunity because it was clearly established that her conduct was unconstitutional based on *Garcia v. City of Trenton*, 348 F.3d 726 (8th Cir. 2003) (Dkt. No. 23, at 11).  Mr. Monk further argues that the instant lawsuit is not barred by the doctrines of collateral attack, *res judicata*, collateral estoppel, or *Rooker-Feldman* because the state court lawsuit involved claims against Alvernon Rogers, the

Arkansas Senate Sergeant at Arms, for defamation, among other things (*Id.*, at 12–16).  Mr. Monk also argues that he has standing to bring this lawsuit (*Id.*, at 17).  Finally, Mr. Monk notes that he does not make any official capacity claims in this lawsuit, so Senator Flowers' sovereign immunity argument is without merit (*Id.*).

The Court first addresses the parties' arguments regarding qualified immunity.  Because the Court concludes that Senator Flowers is entitled to qualified immunity on Mr. Monk's claims for violations of the First Amendment, the Court need not address the parties' remaining arguments and declines to exercise supplemental jurisdiction over Mr. Monk's claims under Arkansas law.

### A.    Qualified Immunity

#### 1.    Applicable Law

"When an official properly and timely files a motion for dismissal or for summary judgment asserting qualified immunity, the official is entitled to a ruling on the issue of qualified immunity.  As such, the district court must issue a reviewable ruling—either granting or denying qualified immunity—before requiring the officials to progress further in litigation at the district court."  *Payne v. Britten*, 749 F.3d 697, 699 (8th Cir. 2014).

Officers sued under 42 U.S.C. § 1983 in their individual capacities can raise qualified immunity as a defense.  This doctrine "shields a government official from liability in a § 1983 action unless the official's conduct violates a clearly established constitutional or statutory right of which a reasonable person would have known."  *Partlow v. Stadler*, 774 F.3d 497, 501 (8th Cir. 2014).  Courts use a two-step inquiry to determine whether qualified immunity applies:  "(1) whether the facts shown by the plaintiff make out a violation of a constitutional or statutory right, and (2) whether that right was clearly established at the time of the defendant's alleged misconduct."  *Id.*  Plaintiffs must meet both steps to defeat qualified immunity, and courts can

begin the analysis with either step. *Greenman v. Jessen*, 787 F.3d 882, 887 (8th Cir. 2015). "If there is no constitutional violation," the Court "need not proceed further." *Riehm v. Engelking*, 538 F.3d 952, 962 (8th Cir. 2008).

The Eighth Circuit Court of Appeals has identified three ways in which a plaintiff can show that law is clearly established. *See L.G. through M.G. v. Columbia Pub. Sch.*, 990 F.3d 1145, 1147–48 (8th Cir. 2021). The plaintiff may identify "existing circuit precedent involving sufficiently similar facts that squarely governs the situation." *Id.* The plaintiff may point to "a robust consensus of cases of persuasive authority" establishing that the facts of her case make out a violation of clearly established right. *Id.* Finally, a plaintiff may show, in rare instances, that a general constitutional rule applies with "obvious clarity" to the facts at issue and carries the day for her. *Id.* (citing *Boudoin v. Harsson*, 962 F.3d 1034, 1040 (8th Cir. 2020); *see also District of Columbia v. Wesby*, ––– U.S. ––––, 138 S. Ct. 577, 590 (2018)). "The principle at the heart of these approaches is that state actors are liable only for transgressing bright lines, not for making bad guesses in gray areas." *Columbia Pub. Sch.*, 990 F.3d at 1148 (citing *Boudoin*, 962 F.3d at 1040).

To establish a claim for First Amendment retaliation under § 1983, a plaintiff must show that "she was engaged in constitutionally protected activity, that [the government official's] adverse action caused her to suffer an injury which would 'chill a person of ordinary firmness from continuing . . . in that activity,' and that the adverse action was motivated in part by . . . exercise of her constitutional rights." *Naucke v. City of Park Hills*, 284 F.3d 923, 927–28 (8th Cir. 2002) (quoting *Carroll v. Pfeffer,* 262 F.3d 847, 850 (8th Cir. 2001)). The ordinary firmness inquiry is objective rather than subjective and evaluates what a reasonable person would have done, not whether a particular plaintiff was deterred, though according to Eighth Circuit case law "how

plaintiff acted might be evidence of what a reasonable person would have done." *Garcia*, 348 F.3d at 729. The Eighth Circuit has explained: "Except where the alleged harassment is so inconsequential that even allowing a claim 'would trivialize the First Amendment,' *Naucke*, 284 F.3d at 928 (quoting *Bloch v. Ribar*, 156 F.3d 673, 679 (6th Cir. 1998)),. . . the determination of whether government action would chill an ordinary person's speech is a matter for the factfinder." *Bennie v. Munn*, 822 F.3d 392, 398 n.2 (8th Cir. 2016).

The Eighth Circuit held in *Naucke* that the plaintiff failed to state a claim for First Amendment retaliation under § 1983 where a government official, in response to the plaintiff's criticism, made comments about the plaintiff that were harassing and offensive, unprofessional, and inappropriate because, according to the district court and the Eighth Circuit on appeal, such comments at issue in that case would not chill a person of ordinary firmness from continuing in constitutionally protected activity; the record reflected that the plaintiff in the face of these comments continued to speak out against the government official on numerous occasions. *Naucke*, 284 F.3d at 928. Further, the Court determined in *Naucke* that there was no evidence to connect the government official to certain of the comments made, also warranting the grant of summary judgment on plaintiff's First Amendment retaliation claim. *Id.*

Although the Eighth Circuit has recognized that, "[i]n some cases, embarrassment, humiliation and emotional distress may be sufficient to support a § 1983 claim, *Id.* (citing *Mattox v. City of Forest Park*, 183 F.3d 515, 521 (6th Cir. 1999)), the Eighth Circuit has also held that allegations of damage to reputation, mental distress, humiliation, and embarrassment also may be insufficient to chill a person of ordinary firmness from engaging in protected activity. *Zutz v. Nelson*, 601 F.3d 842, 849 (8th Cir. 2010). *Zutz* involved First Amendment retaliation claims brought by two members of a watershed district board against co-board members, a board

administrator, a board employee, and others. *Id.*, at 846.  Specifically, the Eighth Circuit held: "All that the original complaint alleges is that the appellees made defamatory statements regarding the appellants' exercise of their official duties as public officials.  While these statements may have damaged the reputation of [appellants] Zutz and Elseth, we believe that such reputational damage was insufficient to chill a person of ordinary firmness from engaging in the protected activity." *Id.*, at 849.

In addition, the Eighth Circuit has held that the independent actions of third parties cannot support a claim of First Amendment retaliation.  *See Scheffler v. Molin*, 743 F.3d 619, 622 (8th Cir. 2010) (concluding that, while an official's instruction to call the police could be deemed a threat of retaliation, "what the police would do after that was in their discretion," not the official's discretion or control); *Naucke*, 284 F.3d at 928 (concluding that comments made by plaintiff's employer suggesting that she quit speaking out were not traceable to any action taken by government officials in retaliation for her exercise of a constitutionally protected right).  However, in *Garcia*, the Eighth Circuit reversed a district court's grant of judgment as a matter of law following a jury verdict where the plaintiff received four parking tickets after speaking at city council meetings.  348 F.3d at 728.  The court distinguished *Naucke*:  "Here, in contrast to *Naucke*, defendant's conduct went beyond mere speech, however offensive.  Defendant, in his capacity as Mayor, engaged the punitive machinery of government in order to punish Ms. Garcia for her speaking out." *Id.* at 729.  The Court noted that the parking tickets, while only petty offenses, have "concrete consequences." *Id.*

### 2.    Analysis Of Mr. Monk's Claim

The Court assumes without deciding at this stage of the litigation for the purposes of its analysis that Mr. Monk was engaged in constitutionally protected activity when he sent Senator

Flowers the February 21, 2017, email.  The Court further assumes without deciding at this stage of the litigation that any adverse action by Senator Flowers would have been motivated in part by Mr. Monk's exercise of his constitutional rights.  The Court therefore examines whether Senator Flowers took an adverse action that caused Mr. Monk to suffer an injury which would chill a person of ordinary firmness from continuing in constitutionally protected activity.

The Court concludes, on the basis of Mr. Monk's allegations, that Senator Flowers' actions would not chill a person of ordinary firmness from continuing constitutionally protected activity. As a result, the Court determines that the facts as alleged by Mr. Monk do not allege a violation of a constitutional or statutory right.  In the alternative, given the weight of legal authority and the circumstances alleged by Mr. Monk in this case, the Court determines that right was not clearly established at the time of Senator Flower's alleged conduct.  For these reasons, Senator Flowers is entitled to qualified immunity on Mr. Monk's claims pursuant to § 1983 for violations of the First Amendment.

Mr. Monk identifies three actions that Senator Flowers allegedly took which chilled his speech:  First, Senator Flowers allegedly showed a copy of Mr. Monk's February 21, 2017, email to the Sergeant at Arms and Arkansas State Police; second, Senator Flowers allegedly instructed the Sergeant at Arms to obtain a photo of Mr. Monk; and third, Senator Flowers allegedly contacted the Arkansas State Police's division of concealed gun carry licensing for the purpose of pressuring Mr. Monk to refrain from communicating with her.

With respect to the first action Mr. Monk identifies, Mr. Monk does not allege that Senator Flowers prevented him from entering the state capitol, that Senator Flowers or anyone else told him that he was prevented from entering the state capitol, or that a reasonable person would believe that they were prevented from entering the state capitol as a result of Senator Flowers' alleged

actions.  In short, Mr. Monk does not allege that Senator Flowers' "conduct went beyond mere speech."  *Garcia*, 348 F.3d at 729.  Mr. Monk does not allege that Senator Flowers "engaged the punitive machinery of government in order to punish" Mr. Monk for speaking.  *Id.* at 729.  Mr. Monk alleges only that Senator Flowers spoke to law enforcement about her communications with Mr. Monk.  Mr. Monk does not allege that he suffered any "concrete consequences" as the result of Senator Flowers' alleged actions.  *Scheffler*, 743 F.3d at 622.

The Court acknowledges that Mr. Monk alleges that Senator Flowers took Mr. Monk's email to the Sergeant at Arms, instructed the Sergeant at Arms to take the email to the chief of the Capitol Police, and reportedly said that she did not want Mr. Monk "in the area or in her office." (*Id.*, ¶ 15).  The copy of the email was delivered to the police with a handwritten note signed by Senator Flowers stating:  "This is most recent email.  I feel this is intimidating & harassing considering the history from 2013.  Senator Flowers." (*Id.*, ¶ 17).  Senator Flowers delivered, or caused to be delivered, a copy of the printed email with the handwritten note to the Arkansas State Police (*Id.*, ¶ 18).  Although Senator Flower's alleged statement that she did not want Mr. Monk "in the area or in her office" could be deemed a threat of retaliation, here the Court concludes such a statement is not actionable based on the facts alleged in Mr. Monk's operative complaint.

Mr. Monk alleges in his complaint that "Senator Flowers could have simply advised Mr. Monk that she did not want to meet with him, or she could have simply ignored his February 21, 2017 email." (Dkt. No. 20, ¶ 30).  Mr. Monk further alleges that "the Sergeant at Arms of the Arkansas Senate . . . is authorized by state statute and Legislative Rule with the power to prohibit entry of persons into his respective legislative house." (*Id.*, ¶ 14).  *See* Ark. Code Ann. § 10-2-104 ("The assistant sergeant at arms in each house shall perform the duties of doorkeeper and postmaster of his or her respective house."); *Parliamentary Manual of the Senate*, 91st Gen.

Assembly of the State of Arkansas, Rule 21.02 ("Persons desiring to visit with members of the Senate shall first secure a written permit from the Sergeant at Arms upon instruction from the member desiring to be visited."). In other words, Mr. Monk alleges that Senator Flowers was not required to speak with him or to permit him entry to the state capitol. The Court concludes that a person of ordinary firmness would not be chilled from continuing constitutionally protected activity as the result of these alleged actions which Senator Flowers was authorized to take. Further, after Senator Flowers reported her concerns about Mr. Monk to the Sergeant at Arms and the Arkansas State Police, what those individuals and agencies did with her report is up to the discretion of those individuals and agencies, not Senator Flowers. *See Scheffler,* 743 F.3d at 622 (concluding that, while an official's instruction to call the police could be deemed a threat of retaliation, "what the police would do after that was in their discretion," not the official's discretion or control).

Although Mr. Monk alleges that he declined to go to the state capitol and appear on a radio show as the result of Senator Flowers' actions, the relevant inquiry is what a reasonable person would have done, not whether a plaintiff was subjectively deterred from speaking. *See Garcia*, 348 F.3d at 729. The Court concludes that a reasonable person who has allegedly been pressured not to communicate with or meet with a particular state senator at his or her office on capitol grounds would not have concluded that he could not go to the state capitol for any purpose. Indeed, Mr. Monk alleges that he felt that he was free to come to the state capitol in the second week of March 2017 after his "fear was allayed" by "relevant law enforcement authorities informing him that he was free to come onto the grounds of the state capitol." (Dkt. No. 20, ¶ 25).

With respect to the second action Mr. Monk identifies, Mr. Monk specifically alleges in his complaint that Senator Flowers also instructed the Sergeant at Arms to obtain a photo of Mr.

Monk (*Id.*, ¶ 20).  The Capitol Police ran a search and obtained Mr. Monk's photo, which was provided to Senator Flowers and police (*Id.*, ¶ 21).  A "look out" among police for Mr. Monk ensued at the state capitol (*Id.*, ¶ 22).   The Court concludes that, under Eighth Circuit precedent, these are insufficient allegations in Mr. Monk's operative complaint to support Mr. Monk's claim against Senator Flowers for First Amendment retaliation under § 1983.  First, Mr. Monk does not allege that Senator Flowers directed the Capitol Police to distribute the photo or place a "look out" for Mr. Monk; he only alleges that Senator Flowers instructed the Sergeant at Arms to obtain a photo.  *See Scheffler*, 743 F.3d at 622 (concluding that, while an official's instruction to call the police could be deemed a threat of retaliation, "what the police would do after that was in their discretion," not the official's discretion or control).  Further, it is unclear what harm Mr. Monk contends he suffered as a result of this conduct, even if the conduct could be attributed to Senator Flowers.  *See Zutz*, 601 F.3d at 849 (holding that reputational damage and embarrassment are insufficient to chill a person of ordinary firmness from engaging in protected activity).

With respect to the third action Mr. Monk identifies, Mr. Monk claims that Senator Flowers, for the purpose of pressuring Mr. Monk to refrain from communicating with her, also contacted the Arkansas State Police's division of concealed gun carry licensing (*Id.*, ¶ 23).  Mr. Monk alleges that this "resulted in a phone call from the division's lieutenant that sought to dissuade Mr. Monk from further communication with Senator Flowers." (*Id.*).  It is not clear how Senator Flowers' alleged phone call to the concealed handgun carry licensing division of the Arkansas State Police caused harm to Mr. Monk that may be attributable to Senator Flowers.  Mr. Monk's vague and conclusory allegation regarding the subsequent phone call from the Arkansas State Police lieutenant to Mr. Monk is insufficient to state a First Amendment retaliation claim against Senator Flowers or to draw a reasonable inference of harm based on conduct attributable

to Senator Flowers.  Even if this allegation alleged a more specific harm, the Court determines at this stage and on the filings before it that "what the police would do after [Senator Flowers' phone call] was in their discretion," not that of Senator Flowers.  *Scheffler*, 743 F.3d at 622.

Further, Mr. Monk does not allege that Senator Flowers ever communicated anything to him or otherwise took any action directed at him.  Mr. Monk alleges that Senator Flowers' actions were only brought to his attention by his employer, who asked him to explain his alleged misconduct (Dkt. No. 20, ¶ 24).  To the extent that Mr. Monk alleges that he was harmed by this encounter, the Court concludes that the alleged harms, if any, on the circumstances of this case are insufficient to chill a person of ordinary firmness from engaging in protected activity.  *Zutz*, 601 F.3d at 849.  Even if Mr. Monk did allege harms sufficient to state a claim, Mr. Monk alleges that these harms resulted from the actions of his employer, not Senator Flowers.  *See Naucke*, 284 F.3d at 928 (concluding that comments made by plaintiff's employer suggesting that she quit speaking out were not traceable to any action taken by defendants in retaliation for her exercise of a constitutionally protected right).  Mr. Monk does not allege from the face of his complaint that Senator Flowers communicated directly with his employer.  *Cf. Bennie v. Munn*, 822 F.3d 392 (8th Cir. 2016) (affirming judgment in favor of state financial regulators who allegedly singled out plaintiff for regular review in retaliation of his political speech in violation of the First Amendment and contacted plaintiff's employer creating the potential to harm plaintiff indirectly by turning his employer against him).  He claims only that Senator Flowers contacted the Arkansas State Police's division of concealed gun carry licensing for the purpose of pressuring Mr. Monk to refrain from communicating with her (Dkt. No. 20, ¶ 23).

Finally, to the extent that Mr. Monk alleges that his § 1983 claim under the First Amendment's petition clause requires analysis distinct from his claim under the free speech clause

(Dkt. No. 20, ¶ 34), the Court rejects the argument.  Further, "[n]othing in the First Amendment or in [the Supreme Court's] case law interpreting it suggests that the rights to speak, associate, and petition require government policymakers to listen or respond to individuals' communications on public issues." *Lee v. Driscoll*, 871 F.3d 581, 585 (8th Cir. 2017) (examining the right to petition, determining that there is no First Amendment right to participate in a non-public government meeting as a member of the public, and quoting *Minn. State Bd. for Cmty. Colls. v. Knight*, 465 U.S. 271, 285 (1984)).  The Court concludes that Mr. Monk fails to state a claim for a violation of the petition clause for the reasons described above.

Accordingly, the Court concludes that Mr. Monk does not allege a constitutional violation for First Amendment retaliation because he fails to allege that a person of ordinary firmness would be chilled from engaging in constitutionally protected activity as the result of Senator Flowers' actions.  In the alternative, given the weight of legal authority and the circumstances alleged by Mr. Monk in this case, the Court determines that right was not clearly established at the time of Senator Flower's alleged conduct.  The Court concludes, therefore, that Senator Flowers is entitled to qualified immunity on Mr. Monk's claims pursuant to § 1983 for violations of the First Amendment.

### B.    Additional Arguments

Because the Court concludes that Senator Flowers is entitled to qualified immunity on Mr. Monk's § 1983 claims, the Court need not address the remainder of the arguments raised in Senator Flowers' motion to dismiss regarding those claims.  Additionally, because the Court dismisses Mr. Monk's federal law claims, the Court declines to exercise supplemental jurisdiction over Mr. Monk's state law claims.

**IV.     Conclusion**

For the foregoing reasons, the Court grants Senator Flowers' motion to dismiss (Dkt. No.

21).  The Court denies the requested relief.

It is so ordered this 30th day of September, 2021.

_____
Kristine G. Baker
United States District Judge